UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| RICARDO NEGRON,<br>    Plaintiff,<br><br>v.<br><br>CORRECTION OFFICER MATTHEWS,<br>    Defendant. | :<br>:<br>:<br>:   Case No. 3:17cv1042(SRU)<br>:<br>:<br>: |

## **RULING ON PENDING MOTIONS**

The plaintiff, Ricardo Negron ("Negron"), is incarcerated at the MacDougall-Walker Correctional Institution ("MacDougall-Walker"). He initiated this action by filing a complaint under 42 U.S.C. § 1983 against Correctional Officer Matthews. On October 16, 2017, pursuant to my review of the complaint under 28 U.S.C. § 1915A, I dismissed the claim for monetary damages and declaratory relief against the defendant in his official capacity and dismissed the claim under the Prison Rape Elimination Act ("PREA") against the defendant in his individual capacity. *See* Initial Review Order ("IRO"), ECF No. 7, at 5. I concluded that the Eighth Amendment claims for sexual harassment and deliberate indifference to safety would proceed against the defendant in his individual capacity. *See id.*

On July 19, 2018, I granted Negron leave to file an amended complaint to add new defendants. On August 2, 2018, Negron filed an amended complaint naming Warden Mulligan, Deputy Warden Jesus Guadarrama and Correctional Officer Sean Matthews as defendants. *See* Am. Compl., ECF No. 19. Pending before the court is a motion to dismiss the amended complaint filed by Officer Matthews and a motion for appointment of counsel filed by Negron. For the reasons set forth below, the motion for appointment of counsel is denied, the motion to

dismiss is granted and the claims in the amended complaint that are asserted against Deputy Warden Guadarrama and Warden Mulligan are dismissed.

I.      **Motion for Appointment of Counsel [ECF No. 21]**

Negron seeks the appointment of *pro bono* counsel. In the motion, Negron describes his claims as a denial of needed medical treatment. As indicated above, however, this case involves a claim that a correctional officer sexually harassed Negron. In support of the motion, Negron states that he has "mental health" and cannot afford to hire an attorney.

Civil litigants do not have a constitutional right to the appointment of counsel. *See Hodge v. Police Officers*, 802 F.2d 58, 60 (2d Cir. 1986) (district judges are afforded "broad discretion" in determining whether to appoint *pro bono* counsel for an indigent litigant in a civil case); 28 U.S.C. § 1915(e)(1) ("The court *may* request an attorney to represent any person unable to afford counsel.") (emphasis added). In addition, the Second Circuit has repeatedly cautioned the district courts against routinely appointing *pro bono* counsel. *See, e.g., Hendricks v. Coughlin*, 114 F.3d 390, 393 (2d Cir. 1997); *Cooper v. A. Sargenti Co.*, 877 F.2d 170, 174 (2d Cir. 1989).

In considering whether to appoint *pro bono* counsel for an indigent litigant, a district court must "determine whether the indigent's position seems likely to be of substance." *See Hodge*, 802 F.2d at 61. "[E]ven where the indigent [litigant's] claim is not frivolous, counsel is often unwarranted where the [litigant's] chances of success are extremely slim." *Cooper*, 877 F.2d at 171; *see also Carmona v. United States Bureau of Prisons,* 243 F.3d 629, 632 (2d Cir. 2001) (denying counsel on appeal where petitioner's appeal was not frivolous but nevertheless appeared to have little merit).

Although I have determined that the allegations in the complaint are not frivolous, I cannot conclude at this time that Negron is likely to succeed on the merits of the claims asserted in the complaint or the amended complaint. Additionally, Negron has made insufficient efforts to secure legal assistance or representation on his own. *See Hodge*, 802 F.2d at 61 (indigent litigant must demonstrate that he or she is unable to obtain counsel or legal assistance independently before a district court will appoint *pro bono* counsel).

In September 2017, Negron contacted Attorney Michael Peck, Yale's Legal Services Organization, and the American Civil Liberties Union. He states that he did not receive a response to his letter from the American Civil Liberties Union. It is unclear whether Yale Legal Services or Attorney Peck responded to Negron's letters or telephone calls. Although the Inmates Legal Aid Program ("ILAP") may not be able to represent Negron, the program attorneys may be available to assist him in litigating the case. I conclude that Negron has not made sufficient recent attempts to secure representation or assistance independently. Nor has he demonstrated that the Inmates' Legal Aid Program is unavailable or unwilling to assist him. Accordingly, the motion for appointment of counsel is denied.

## II.     Motion to Dismiss [ECF No. 20]

Officer Matthews raises one argument in support of his motion to dismiss. He contends that the allegations in the amended complaint regarding the isolated incident involving sexual verbal harassment by him do not state a claim under the Eighth Amendment because the alleged conduct is not sufficiently severe or repetitive.

### A.     Standard of Review

When ruling on a Rule 12(b)(6) motion to dismiss, the court "accepts as true all of the

3

factual allegations set out in [the] complaint, draw[s] inferences from those allegations in the light most favorable to the plaintiff, and construes the complaint liberally." *Roth v. Jennings*, 489 F.3d 499, 510 (2d Cir. 2007) (internal quotation marks and citation omitted). In addition to the facts set forth in the complaint, the court may also consider documents either attached to the complaint or incorporated into it by reference, "and matters subject to judicial notice." *New York Pet Welfare Ass'n, Inc. v. City of New York*, 850 F.3d 79, 86 (citation omitted), *cert. denied*, ___ U.S. ___, 138 S. Ct. 131 (2017).

To withstand a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when ... plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged." *Id.* The plausibility standard is not the equivalent of a probability standard but requires something more than the assertion of allegations suggesting the mere possibility that the defendant engaged in unlawful conduct. *See id.* Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a plausible claim for relief. *Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

"Where ... the complaint was filed *pro se*, it must be construed liberally with 'special solicitude' and interpreted to raise the strongest claims that it suggests." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)). Nevertheless, a *pro se* plaintiff's complaint still must state a plausible claim for relief. *Id.* (citations omitted).

B.     **Facts**

The amended complaint includes the following facts. On February 28, 2017, prison officials placed Negron on suicide watch and confined him in a cell in the restrictive housing unit at MacDougall-Walker. Am. Compl. ¶ 1. At some point between 1:00 p.m. and 3:00 p.m., Officer Matthews opened the trap in Negron's cell door, placed a piece of paper in the trap and made sexual comments towards Negron. *Id.* ¶ 2. Negron became upset and swore at Officer Matthews. *Id.* ¶ 3. In response, Officer Matthews reached his hand into the trap. *Id.* ¶ 4. Negron backed up and yelled out for Control Officer Brisco. *Id.* Control Officer Brisco notified Lieutenant Beebe. *Id.*

When Lieutenant Beebe came to Negron's cell, Negron stated that he wanted to file charges against Officer Matthews, including a complaint under the PREA, and handed Lieutenant Beebe a completed inmate request form and a grievance form. *Id.* ¶¶ 4-5 & at 13-15. Negron states that the Department of Correction refused to process either form. *Id.* ¶ 5.

Lieutenant Beebe interviewed Negron and completed a PREA checklist. *Id.* at 8. Later that evening, a mental health social worker spoke with Negron regarding the incident with Officer Matthews. *Id.* ¶ 6 & at 16. During a visit with a medical staff member, Negron complained of having chest pains on and off. *Id.* The medical staff member noted that Negron was not experiencing chest pains during the visit. *Id.* at 16.

On March 2, 2017, Negron met with a Connecticut State Police Officer. *Id.* ¶ 7. During the interview, Negron gave a statement regarding the incident with Officer Matthews. *Id.*

Negron wrote to Warden Mulligan and the unit counselors seeking "all the paperwork concerning the incident" with Officer Matthews. *Id.* ¶ 8. On May 2, 2017, Negron received "an

5

intimidating letter from Deputy Warden Jesus Guadarrama" regarding the disposition of his PREA complaint against Officer Matthews for sexual harassment. *Id.* ¶ 8 & at 21. Deputy Warden Guadarrama indicated that facility reviewers had determined that his allegation against Officer Matthews was unfounded based on a lack of evidence and an incident report. *Id.* at 21. Deputy Warden Guadarrama noted that this was the second allegation of sexual harassment or misconduct asserted by Negron that had been deemed unfounded and warned Negron that if he continued to make unfounded allegations of sexual harassment, he might face a disciplinary report for falsely reporting an incident. *Id.*

### C. Discussion

Officer Matthews argues that the allegation that he sexually harassed Negron by making inappropriate, sexually indicative comments through the trap in Negron's cell door fails to state an Eighth Amendment claim of cruel and unusual punishment. Pursuant to Local Rule 12(a), Officer Matthews filed with the court and served on Negron a Notice to Self-Represented Litigant Concerning Motion to Dismiss together with the motion to dismiss and memorandum in support of the motion to dismiss. *See* Notice, ECF No. 20-2. The Notice explains the responsibilities of litigant when a motion to dismiss is filed and that the litigant must file a memorandum in opposition to a motion to dismiss. Despite this notice, Negron has not filed a response to the motion to dismiss.

"The Eighth Amendment sets constitutional boundaries on the conditions of imprisonment." *Boddie v. Schnieder*, 105 F.3d 857, 861 (2d Cir. 1997). The Supreme Court has held that although the Constitution does not require "comfortable" prison conditions, the Eighth Amendment imposes certain duties on prison officials, to provide for inmates' basic human

6

needs including: "adequate food, clothing, shelter, [] medical care, and . . . safety. *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994) (internal quotation marks and citations omitted). To state a deliberate indifference to health or safety claim or a conditions of confinement claim under the Eighth Amendment, an inmate must demonstrate both an objective and a subjective element.

To meet the objective element, an inmate must allege that he was incarcerated under conditions that resulted in a "sufficiently serious" deprivation, such as the denial of a "life[] necessity[y]" or a "substantial risk of serious harm." *Id.* at 834 (internal quotation marks and citations omitted). To meet the subjective element, an inmate must allege that the defendant prison officials possessed culpable intent, that is, the officials knew that he faced a substantial risk to his health or safety and disregarded that risk by failing to take corrective action. *See id.* at 834, 837. Thus, an allegation of "mere negligen[t]" conduct is insufficient. *Id.* at 835. Rather, the subjective element requires that a plaintiff allege that prison officials acted with "a mental state equivalent to subjective recklessness, as the term is used in criminal law." *Salahuddin v. Goord,* 467 F.3d 263, 280 (2d Cir. 2006).

It is well-settled that verbal harassment and threats do not rise to the level of a constitutional violation. *See Cole v. Fischer*, 379 F. App'x 40, 43 (2d Cir. 2010) ("Verbal harassment, standing alone, does not amount to a constitutional deprivation."); *Cuoco v. Moritsugu,* 222 F.3d 99, 109 (2d Cir. 2000) (noting that "rudeness and name-calling does not rise to the level of a constitutional violation"); *Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986) (Verbal harassment and name calling, absent physical injury, are not constitutional violations cognizable under § 1983.). Verbal harassment alone does not meet the objective component of

7

an Eighth Amendment conditions claim because it does not deprive an inmate of a basic human need.

With regard to harassment by a correctional officer of an inmate that is sexual in nature, the Second Circuit acknowledged in *Boddie* that physical "sexual abuse" of a prisoner by a correctional officer "may constitute serious harm inflicted by an officer with a sufficiently culpable state of mind" in violation of a prisoner's Eighth Amendment right to be free from cruel and unusual punishment. 105 F.3d at 861. Thus, an Eighth Amendment claim of sexual abuse by a prison officer or official may be stated by meeting both a subjective and an objective element. *Id.* With regard to the objective element:

> Sexual abuse may violate contemporary standards of decency and can cause severe physical and psychological harm. . . . For this reason, there can be no doubt that severe or repetitive sexual abuse of an inmate by a prison official can be objectively, sufficiently serious enough to constitute an Eighth Amendment violation. . . . Moreover, like the rape of an inmate by another inmate, sexual abuse of a prisoner by a corrections officer has no legitimate penological purpose, and is simply not part of the penalty that criminal offenders pay for their offenses against society.

*Id.* (internal quotation marks and citations omitted). To meet the subjective element, an inmate must allege facts to show that the prison officer or official acted with a "'sufficiently culpable state of mind.'" *Crawford v. Cuomo*, 796 F.3d 252, 256 (2d Cir. 2015) (quoting *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)). "Where no legitimate law enforcement or penological purpose can be inferred from the defendant's alleged conduct, the abuse itself may, in some circumstances, be sufficient evidence of a culpable state of mind." *Boddie,* 105 F.3d at 861 (citing *Hudson*, 503 U.S. at 6-7).

In addressing the objective element in *Boddie*, the Second Circuit concluded that the isolated incidents during "which [the plaintiff] was verbally harassed, touched, and pressed

8

against without his consent" were "despicable and, if true . . . m[ight] potentially be the basis of state tort actions. . . . they d[id] not involve a harm of [Eighth Amendment] . . . proportions." In reaching its decision, the Second Circuit emphasized that "no single incident" described by the plaintiff "was severe enough to be objectively sufficiently serious. . . . [and] the incidents were [not] cumulatively egregious in the harm they inflicted." *Id.*

In *Crawford*, the Second Circuit revisited and clarified its holding in *Boddie*. The Court observed that district courts were construing the standard in *Boddie* too narrowly and explained that the application of the *Boddie* rule must involve "look[ing] beyond historical conceptions to the evolving standards of decency that mark the progress of a maturing society" and reflect the fact that the "sexual abuse of prisoners, once passively accepted by society, deeply offends today's standards of decency." *Id.* at 254, 259. "Accordingly, conduct that might not have been seen to rise to the severity of an Eighth Amendment violation 18 years ago may now violate community standards of decency, and for that reason, ... the officer's conduct in *Boddie* would flunk its own test today." *Id.* at 260. The Court held that "a corrections officer's intentional contact with an inmate's genitalia or other intimate area, which serves no penological purpose and is undertaken with the intent to gratify the officer's desire or to humiliate the inmate, violates the Eighth Amendment." *Id.* at 257. Thus, one isolated incident of sexual abuse that was "sufficiently severe or serious" could constitute conduct that was sufficiently serious or harmful enough to offend contemporary standards of decency and to meet the objective prong of the Eighth Amendment standard. *Id.*

Officer Matthews argues that the allegations in the amended complaint concern only an isolated incident in which he allegedly made sexually suggestive comments to Negron through

9

the trap in Negron's cell door and placed a piece of paper and his hand in the trap in the cell door. Officer Matthews contends that those allegations are not sufficiently severe to constitute a sexual harassment that is actionable under the objective prong of the Eighth Amendment.

I note that the complaint included the same allegations of verbal harassment involving sexually suggestive comments by Officer Matthews as are included in the amended complaint. *See* Compl., ECF No. 1, §§ 2-3. The complaint also included an allegation that Officer Matthews attempted to grab Negron's genitals. *See id.* § 6. Furthermore, Negron alleged that the incident involving sexual harassment by Officer Matthews had caused him to lose sleep and to seek constant treatment from a mental health provider. *See id.* § 9. After reviewing the complaint, I concluded that the allegations that Matthews had sexually harassed Negron verbally and had attempted to harass Negron physically constituted sufficiently egregious conduct to state a plausible Eighth Amendment claim for sexual harassment and deliberate indifference to safety. *See* IRO, ECF No. 7, at 4-5 (citing *Willey v. Kirkpatrick*, 801 F.3d 51, 70 (2d Cir. 2015) and *Smith v. Roberson*, 9:15-CV-930(DNH/TWD), 2016 WL 1056588, at *2-3 (N.D.N.Y. Mar. 16, 2016).

Although the amended complaint includes the same allegations regarding Officer Matthews verbal harassment of Negron using sexually suggestive statements, Negron does not allege that Officer Matthews attempted to grab his genitals. Instead, Negron alleges that after placing a piece of paper in the trap in the door of his cell, Officer Matthews put his hand in the trap. Am. Compl. ¶¶ 2, 4. Thus, there is no allegation of an attempt by Officer Matthews to physically touch or grope Negron. In addition, Negron does not allege that the incident caused him to seek mental health treatment or otherwise affected him. The mental health records

attached as an exhibit to the amended complaint reflect that Negron met with a clinical social worker named William Gilliand at 7:15 p.m. on the date of the incident to discuss Negron's claim of sexual harassment. *See id.* at 16. Negron reported no mental health concerns that were connected or associated with the statements made by Officer Matthews earlier that day. *See id.* Later that evening, Gilliand cleared Negron to return to either the restrictive housing unit or to general population. *See id.* at 17.

Negron has not alleged that Officer Negron grabbed for or touched him through the trap from outside his cell. Nor does Negron allege that Officer Matthews exposed his genitals to him or threatened to assault him sexually. Thus, the allegations in the amended complaint differ in severity from the allegations in *Roberson*, 2016 WL 1056588, at *3, in which a female detainee asserted that a male prison guard chased her, exposed his genitals to her and threatened to sexually assault her. *See id.* at *3.

In *Willey*, the Second Circuit noted that the verbal sexual harassment endured by the plaintiff caused him to suffer "psychological pain" and to attempt to commit suicide and directed the district court on remand to consider whether the nature and degree of those injuries might "constitute an 'appreciable injury' that makes actionable the various forms of [verbal] harassment Willey allegedly suffered." *Willey*, 801 F.3d at 70. The Second Circuit also instructed the district court to evaluate the claims of verbal sexual harassment under the standard set forth in *Crawford*, which had been decided after the district's dismissal of Willey's claim. *Id.*

The amended complaint filed by Negron includes no allegations of emotional or psychological harm or pain. As part of the PREA protocol, a clinical social worker evaluated Negron, who indicated that Negron reported no mental health issues stemming from the incident

11

earlier that day involving Officer Matthews and cleared Negron for return to the restrictive housing unit or the general population unit later that evening. I conclude that the allegations asserted by Negron in the amended complaint regarding a single incident during which Officer Matthews verbally sexually harassed him do not rise to the same level of egregiousness as the allegations asserted in the complaint. *See White v. Marinelli*, No. 9:17-CV-1094 (LEK/ATB), 2019 WL 1090802, at *19 (N.D.N.Y. Mar. 8, 2019) (denying plaintiff's motion to reinstate claim of verbal sexual harassment involving female correctional officer's alleged verbal "comments [made] at [plaintiff's] cell" on one occasion in an "attempt[] to induce him to expose his penis," because "[u]nlike the physical abuse alleged in *Crawford* and *Boddie*, [the female correctional officer's] alleged verbal harassment, though degrading to [p]laintiff, does not constitute severe and repetitive sexual abuse and, therefore, [was] not sufficiently serious to be cruel and unusual punishment.") (internal quotation marks and citations omitted); *Brown v. Cronin*, No. 17-CV-74-FPG, 2019 WL 635578, at *4 (W.D.N.Y. Feb. 14, 2019) ("Here, aside from the allegations that Serediuk's actions and words 'totally humiliated and embarrassed' Plaintiff and that Plaintiff spoke with mental health professionals, Plaintiff does not allege an 'appreciable injury' like that alleged in *Willey*. Thus, Plaintiff fails to state an actionable Eighth Amendment claim based on Serediuk's verbal or sexual harassment after the December 13, 2016 elevator incident.").

I note that in the inmate request form and the grievance form that Negron claims to have filed on February 28, 2017 regarding the incident involving verbal sexual harassment by Officer Matthews, he mentions that it was the "2nd time" that he had been sexually harassed. *See* Am. Compl. & ¶ 5 at 14-15. Neither the identity of the individual who allegedly sexually harassed Negron at some point prior to February 28, 2017, nor the nature of the harassment is evident

12

from the allegation made in the inmate request or the grievance. *See id.* Furthermore, there are no allegations in the body of the amended complaint regarding the nature of the prior incident or that Officer Matthews was involved in the incident. As such, the fact that there may have been a prior incident involving sexual harassment does not in and of itself state a claim against Officer Matthews because Negron has not alleged that Officer Matthews was involved in or aware of the prior incident. Thus, I do not construe the amended complaint as asserting a claim against Officer Matthews regarding any prior incident involving sexual harassment against Negron.

Although the verbal statements made by Officer Matthews on February 28, 2017, as described in the amended complaint, were offensive and may have caused Negron to feel humiliated, that incident of verbal harassment alone was not "sufficiently serious or severe" or "repugnant" to state a plausible claim of sexual harassment under *Crawford*, 796 F.3d at 257, or *Roberson*, 2016 WL 1056588, at *2-3. *See Bell v. Tromblee*, No. 9:18-CV-0814L (EK/DEP), 2018 WL 6000146, at *3 (N.D.N.Y. Nov. 15, 2018) (in view of absence of case law within the Second Circuit "'in which a plaintiff ha[s] established an actionable [Eighth Amendment] claim of sexual harassment ... without having physical contact with the alleged perpetrator, or without, at the very least, alleging egregious sexual conduct,'" inmate's claim that prison guard "ma[de] harassing comments to [inmate] about his genitalia" did not constitute conduct that was so "'severe and repetitive'" that it rose to level of punishment or abuse that was "'cruel and unusual'" as defined by *Crawford)* (quoting *Holland v. City of New York*, 197 F. Supp. 3d 529, 547 (S.D.N.Y. 2016), and *Crawford*, 796 F.3d at 256); *Keaton v. Ponte*, No. 16 CIV. 3063 (KPF), 2017 WL 3382314, at *10 (S.D.N.Y. Aug. 4, 2017) (dismissing prisoner's Eighth Amendment claims of sexual abuse against female corrections officers where there was no

13

"illicit physical contact between a corrections officer and an inmate" and the corrections officers' alleged "verbal harassment," encouraging the inmate to use the shower, watching him shower, and making sexual gestures with lipsticks and tongues, "without more, [were] not actionable" as cruel and unusual punishment in violation of the Eighth Amendment). Accordingly, the motion to dismiss the Eighth Amendment claim of sexual abuse, as asserted against Officer Matthews in the amended complaint, is granted.

## III. Amended Complaint [ECF No. 19] – Claims Against Mulligan and Guadarrama

As indicated above, the amended complaint adds two new individuals as defendants, Deputy Warden Guadarrama and Warden Mulligan. Because I did not previously review the claims asserted against Deputy Warden Guadarrama and Warden Mulligan in the amended complaint filed by Negron, I do so now pursuant to 28 U.S.C. § 1915A.

### A. Standard of Review

Under section 1915A, I must dismiss any portion of the amended complaint that is frivolous, malicious, or fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1) & (2). Although detailed allegations are not required, the amended complaint must include sufficient facts to afford the defendants fair notice of the claims and grounds upon which they are based and to demonstrate a plausible right to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Nevertheless, it is well-established that "[p]*ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'"

14

*Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

### B. Facts

The facts as alleged in the amended complaint are set forth in subsection B of section II above. I assume those facts to be true for purposes of evaluating the plausibility of the allegations in the amended complaint asserted against Warden Mulligan and Deputy Warden Guadarrama.

#### 1. Warden Mulligan

Negron only mentions Warden Mulligan in connection with his attempt to obtain copies of documents related to the incident involving the alleged sexual harassment by Officer Matthews on February 28, 2017. Negron asserts that prior to his receipt of the decision regarding the disposition of his PREA complaint against Officer Matthews, he wrote to Warden Mulligan and a counselor supervisor in an attempt to obtain paperwork pertaining to the incident involving Officer Matthews. *See* Compl. ¶ 8. The exhibits attached to the amended complaint reflect that on March 16, 2017, a records department official provided Negron with the copies of the documents that he had requested. *See id.* at 20. On September 7, 2017, Negron received documents from the FOIA liaison at MacDougall-Walker in response to his request for a copy of the Incident Report from the February 28, 2017 incident. *See id.* at 22. Thus, I conclude that Negron has failed to state a claim that Warden Mulligan violated his constitutionally or federally protected rights. The claim against Warden Mulligan is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

### 2. Deputy Warden Guadarrama

Negron alleges that on May 2, 2017, he received a letter from Deputy Warden Guadarrama regarding the disposition of the PREA complaint that he had filed on February 28, 2017 against Officer Matthews. A copy of the letter is attached to the amended complaint. *Id.* at 21. In that letter, Deputy Warden Guadarrama stated that facility reviewers had determined that Negron's allegation against Officer Matthews was unfounded based on a lack of evidence and an incident report. *Id.* Deputy Warden Guadarrama noted that this was the second allegation of sexual harassment that had been asserted by Negron and had been deemed unfounded. He warned Negron that if he continued to make unfounded allegations of sexual harassment, Negron might face a disciplinary report for falsely reporting an incident. *Id.*

Negron claims that the letter was an attempt to intimidate him and to dissuade him from filing similar PREA complaints in the future. A review of the State of Connecticut Department of Correction Administrative Directive that governs PREA complaints, 6.12, states that: "Inmates who file reports of sexual abuse and/or sexual harassment that are deemed to be false and unfounded after proper investigation may be subject to disciplinary action in accordance with Administrative Directive 9.5, Code of Penal Discipline and/or criminal charges according to applicable State laws." Admin. Dir. 6.12(12)(A).[1] Thus, the information provided in the letter from Deputy Warden to Negron on May 2, 2017 regarding the consequences of filing multiple, unfounded claims of sexual harassment or assault was accurate.

---

[1] Administrative Directive 6.12, entitled Sexual Assault Prevention Policy, dated 11/20/2014, became effective on July 20, 2015 and may be found online at https://www.portal.ct.gov/DOC under Directives and Policies.

Furthermore, as I noted in the Initial Review Order addressing the allegations in the complaint, "the PREA is intended to compile data and statistics concerning incidences of prison rape and to develop and implement national standards for the detection, prevention, reduction, and punishment of prison rape." IRO at 4 (citing PREA, 42 U.S.C. §§ 30302-03, 30306-07 (formerly cited as §§ 15602-03, 15606-07)). The PREA includes no language that grants specific rights to inmates. *See Gonzaga University v. Doe*, 563 U.S. 273, 279-80 (2002) (in the absence of "an 'unambiguous' intent to confer individual rights," such as a right to sue, courts will not imply such a right in a federal funding provision). Thus, courts have routinely held that there is no private right of action for inmates to sue prison officials for non-compliance with the PREA. *See Brown v. Rose*, No. 3:16-CV-00229 (JCH), 2018 WL 3637474, at *7 (D. Conn. July 31, 2018) ("Because the PREA does not create a private right of action for prisoners, Brown cannot show that he was actually injured if Captain Cichetti prevented him from pursuing a PREA claim.") (collecting cases); *Patterson v. Patterson*, No. 1:16-CV-00844 EAW, 2017 WL 1383899, at *4 (W.D.N.Y. Apr. 14, 2017) ("[N]othing in the statute suggests that PREA intended to establish a private cause of action for allegations of prison rape, and every court to address the issue has determined that PREA cannot support such a cause of action by an inmate.") (internal quotation marks and citations omitted); *Chao v. Ballista*, 772 F. Supp. 2d 337, 341 n.2 (D. Mass. 2011) (collecting cases and noting that "every court to address the issue" has held that the PREA does not allow a private cause of action); *Chinnici v. Edwards,* No. 1:07–cv–229, 2008 WL 3851294, at *3 (D. Vt. Aug. 12, 2008) ("[T]he PREA confers no private right of action. The PREA is intended to address the problem of rape in prison, authorizes grant money, and creates a commission to study the issue.") (citation omitted). Accordingly, the allegation

that the May 2, 2017 letter from Deputy Warden Guadarrama, which included a warning regarding the consequences of filing multiple unsubstantiated PREA claims, might have dissuaded Negron from filing a PREA complaint in the future does not state a claim of a violation of Negron's constitutionally or federally protected rights. This claim against Deputy Warden Guadarrama is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

It is unclear whether Negron has also named Deputy Warden Guadarrama because he was Officer Matthew's supervisor. Liberally construing the allegations against Deputy Warden Guadarrama, Negron may be attempting to assert an Eighth Amendment claim of deliberate indifference to his safety or health based on Deputy Warden Guadarrama's awareness of the investigation into the PREA complaint filed by Negron against Officer Matthews for sexual harassment and Deputy Warden Guadarrama's alleged failure to take any action to remedy the situation. Because I have concluded that the allegations in the amended complaint fail to state a plausible Eighth Amendment claim against Officer Matthews, the claim of supervisory liability on the part of Deputy Warden Guadarrama fails as well. Any Eighth Amendment claim of sexual harassment by Officer Matthews on February 28, 2017, asserted against Deputy Warden Guadarrama, as the supervisor of Officer Matthews, is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

As noted above, the letter from Deputy Warden Guadarrama makes reference to a prior allegation by Negron of sexual harassment or abuse that was determined to be unfounded by the Department of Correction. *See* Am. Compl. at 21. The letter contains no description of the nature of the prior allegation of sexual harassment or the identity of the individual or individuals involved in the alleged sexual harassment and does not reflect whether Deputy Warden Guadarrama was aware of the allegation at the time it was made. Nor, as indicated above, does

Negron include any facts regarding this prior allegation of sexual harassment or abuse in the second amended complaint. As such, the mere reference to a prior allegation of sexual abuse or harassment in a letter dated May 2, 2017 does not state a claim that Deputy Warden Guadarrama violated Negron's constitutional rights. Thus, I do not construe the amended complaint as asserting a claim against Deputy Warden Guadarrama regarding any prior incident involving sexual harassment against Negron.

**Conclusion**

It is hereby ordered that:

(1) Officer Matthews' Motion to Dismiss, [**ECF No. 20**], the claims in the amended complaint asserted against him is **GRANTED**. The allegation against Warden Mulligan regarding Negron's requests for copies of documents related to the incident involving Officer Matthews, the allegation that the May 2, 2017 letter from Deputy Warden Guadarrama might have dissuaded Negron from filing a PREA complaint in the future, and the allegation that Deputy Warden Guadarrama is liable as a supervisor for the sexual harassment of Negron on February 28, 2017 by Officer Matthews are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1). The Motion for Appointment of Counsel, [**ECF No. 21**], is **DENIED**. The Clerk is directed to enter judgment for the defendants and close this case.

(2) If Officer Matthews was involved in the alleged incident involving sexual harassment of Negron that occurred at some point before February 28, 2017 and Negron can allege facts to state a plausible Eighth Amendment claim of sexual abuse, I will permit Negron to file a motion to reopen and to file a second amended complaint. As indicated above, this prior incident was mentioned in Negron's inmate request and grievance that are attached to the

19

amended complaint as exhibits.  *See* Am. Compl. at 13-15.  Any amended complaint must specify the nature of the harassment by Officer Matthews, where and when it occurred and what steps Negron took to make prison officials aware of the alleged sexual harassment.  If Deputy Warden Guadarrama was involved in or aware of this prior incident of sexual harassment by Officer Matthews, Negron may include him as a defendant and describe how he was involved in or became aware of the incident.  If Negron chooses to file a motion to reopen and to file a second amended complaint regarding the prior incident of sexual harassment, both the motion and amended complaint should be filed within twenty days of the date of this order.

If, however, Officer Matthews was **not** involved in the prior incident of sexual harassment, Negron may pursue such a claim against the individual who was involved in the incident and Deputy Warden Guadarrama to the extent that he was involved in or aware of the incident, in a separate action.

SO ORDERED at Bridgeport, Connecticut this 21st day of March 2019.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge